1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
2    _____

3    United States of America,      ) Criminal
                                    ) No. 1:19-mj-00298-RMM
4                    Plaintiff,     )
                                    ) **Detention Hearing**
5    vs.                            )
                                    )
6    Haiteng Wu, et al.,            ) Washington, D.C.
                                    ) December 6, 2019
7                    Defendants.    ) Time:  4:45 p.m.
     _____

8
          Transcript of **Detention Hearing**
9                    Held Before
     The Honorable Magistrate Judge Robin M. Meriweather
10               United States Magistrate Judge

11   _____

              A P P E A R A N C E S
12
     For the Plaintiff:      **Kondi J. Kleinman**
13                           **Ryan K. Dickey**
                             U.S. ATTORNEY'S OFFICE FOR THE
14                           DISTRICT OF COLUMBIA
                             555 Fourth Street, Northwest
15                           Washington, D.C. 20530

16   For the Defendant:      **Tony W. Miles**
                             FEDERAL PUBLIC DEFENDER FOR THE
17                           DISTRICT OF COLUMBIA
                             625 Indiana Avenue, Northwest, Suite 550
18                           Washington, D.C. 20004

19   Also Present:           Christine Schunk, Pretrial Officer

20   Proceedings reported by audio recording.

21   _____

     Transcribing Court Reporter:
22                           Nancy J. Meyer, RDR, CRR
                             Official Court Reporter
23                           United States Courthouse, Room 6509
                             333 Constitution Avenue, Northwest
24                           Washington, D.C. 20001
                             (202) 354-3118

25

1              P R O C E E D I N G S

2            THE COURTROOM DEPUTY:  This is Magistrate Case Year

3    2019-298M [sic], United States of America vs. Haiteng Wu.

4            Representing the government are Kondi Kleinman and

5    Ryan Dickey.  Representing the defense is Tony Miles.  Also

6    with us is Pretrial Services Officer Christine Schunk.  This is

7    scheduled to be a preliminary hearing and a detention hearing.

8            THE COURT:  Mr. Miles.

9            MR. MILES:  Yes, Your Honor.  Your Honor, if you may

10   recall, Mr. Wu at his initial appearance indicated he intends

11   to retain counsel.  He still intends to do so, but the Court

12   asked me to remain in the case until that occurs.

13           So in light of that, what we would like to do is to

14   proceed with the detention hearing only and continue the

15   preliminary hearing.  I'll -- I'll note a defense attorney did

16   contact me yesterday, and I understand he met with Mr. Wu and

17   they're working on making an arrangement.  So progress is being

18   made in that regard.

19           But so we would like to proceed today with the

20   detention hearing only.  Thank you.

21           THE COURT:  Is there -- is there a specific date

22   you're requesting for the continuance of the preliminary

23   hearing?

24           MR. MILES:  I would -- I thought about that a moment

25   ago, and I should have asked counsel what day --

1          THE COURT:  Oh.  They were available.

2          MR. MILES:  -- works for him.  I did not do that.

3          THE COURT:  Okay.

4          MR. MILES:  Perhaps we should set it for next week,

5    Thursday or Friday, and I will let counsel know that counsel

6    can contact the deputy clerk if that's not a good day.

7    That's -- that's what I suggest.

8          THE COURT:  Okay.  Thank you.

9          MR. MILES:  Thank you.

10          THE COURT:  Mr. Kleinman, do you have any conflicts

11    that we need to work around in rescheduling the preliminary

12    hearing?

13          MR. KLEINMAN:  Inspector Cohen is unavailable on

14    Friday.  So we would ask for Thursday.

15          THE COURT:  Okay.  I will continue the preliminary

16    hearing to Thursday, December the 12th at 1:45 p.m. in this

17    courtroom.

18          We will go forward with the detention hearing today.

19    I have reviewed and received the United States' memorandum in

20    support of pretrial detention.  Mr. Kleinman or Mr. Dickey, did

21    you -- are you ready to present argument regarding detention?

22          MR. KLEINMAN:  Yes, Your Honor.  Your Honor, this is

23    a -- this is a big fraud against Apple.  I think conservatively

24    we've estimated it -- the loss to be just over 1 and a half

25    million, and the defendant has an active role.  His fraud

1    extends not just to the D.C. metropolitan area but across the

2    country and back into China.

3              As the Court is aware from our memorandum, some of

4    the phones that were imported from Hong Kong to the defendant

5    or his conspirators ended up being returned to Apple stores

6    across the country.  The weight of the evidence in this case is

7    extremely strong.  It includes surveillance video, electronic

8    communications, mailbox rental applications from UPS stores,

9    the use of fake identification cards, and the evidence shows

10   that the scheme has gone on for several years.  Even after

11   Mr. Wu learned that CBP intercepted a shipment of counterfeit

12   iPhones, he continued the scheme for several years.  Agents

13   found 48 phones in his and Ms. Cai's residence on Tuesday when

14   they went to arrest Ms. Cai and search their residence.

15             At this point in time his ties to the United States

16   are not as strong as they would be if he were to go back to

17   China.  He certainly has a child in China.  The child is not

18   here.  His wife is a co-defendant.  His job is no longer

19   available to him.  And he's not a lawful permanent resident,

20   and he's not a U.S. citizen.

21             The potential sentence he faces in this case is quite

22   severe based on the loss amount that we know about just now,

23   and, of course, the United States does not have an extradition

24   treaty with China.  So if he were to flee the jurisdiction,

25   there would be effectively no way for the United States to

1    bring him to justice for these particular crimes.

2           Based on all of that, the government would ask that

3    you hold him without bond pending trial.

4           THE COURT:  Thank you, Mr. Kleinman.

5           MR. MILES:  Court's indulgence.

6           THE COURT:  Yes.  Take your time, Mr. Miles.

7           MR. MILES:  Your Honor, as the Court's aware, Mr. Wu

8    is presumed innocent.  There's been no finding of guilt with

9    respect to -- with respect to this -- these allegations, and as

10   I proceed here today, I want to -- I -- we make no

11   acknowledgment or admission as to any of the -- the conduct

12   that the government attributes to Mr. Wu.

13          I might make some comments about their evidence, but

14   in doing so, I'm not acknowledging that any of the evidence

15   that they have put forth is accurate or -- or true.  Kind of

16   going through the government's detention memorandum, I -- I

17   have some comments.  I note that they represent that they have

18   intercepted, I guess, have access to Mr. Wu's electronic

19   communications, his internet search history, as well as some of

20   his trash.  And I think that's significant because that is a

21   treasure trove of information about what somebody's doing, what

22   they're thinking.  And having that information, the government

23   is unable to tell the Court that they have found information

24   that Mr. Wu was making arrangements or plans to flee or to

25   travel or to do something to avoid prosecution.

1          There's no evidence that he made any financial

2     transactions or arrangements or is in touch with anybody

3     anywhere in the world to receive him or to help him flee the

4     country, if necessary.  There's absolutely no evidence at all

5     from that treasure trove of information to indicate at all that

6     Mr. Wu's a flight risk, and I -- I think that's huge.  It's

7     unusual that in these -- in fraud cases that the government has

8     access to that kind of information when we're trying to make

9     flight determinations, but here they have that.

10          Also, the government alleges that they recovered

11     false identifications attributed to Mr. Wu and that Mr. Wu had

12     used various aliases.  Now, if I got all the names together --

13     I hope I'm not mistaken -- but what it seems to me -- again,

14     we're not acknowledging that Mr. Wu used any of this -- but

15     it -- all the false I.D.s and aliases were necessary to commit

16     the offense that they claim Mr. Wu committed.

17          In other words, in order to do what they claim he

18     did, one had to have used these I.D.s.  In other words, these

19     I.D.s were there for -- according to the government's theory,

20     limited to the purpose of furthering the scheme, and they have

21     nothing to do with fleeing, traveling, or trying to leave the

22     country.  I -- I think that's significant.

23          The government alleges that Mr. Wu told lies.  We --

24     we discussed this at his initial appearance.  The government

25     focuses on this allegation that Mr. Wu lied to the police when

1    he was arrested, when he supposedly said that certain items

2    were not with him and they were at home.  I noted that these

3    items would have been items that would be related to his --

4    potentially to his guilt.  They potentially were incriminating,

5    and like statements, one -- I can see how one would feel they

6    have a right not to turn over to the government or direct the

7    government to evidence that may incriminate them.  And it's

8    clear we have rights not to make statements that could

9    incriminate us.  So beyond that, the government has no other

10   information that -- beyond that or beyond allegations related

11   to the case that Mr. Wu has been deceptive or told lies.

12          The government cites, if -- I think two cases, if I

13   remember, in discussing cases where people were held and not

14   held.  I must be frank; in the *Tapia* case, it was unclear to me

15   whether that person was held or not.  I didn't have an

16   opportunity to look at the case.  But in the *Epstein* case, the

17   government reports that person was held, and I think that that

18   case can easily be distinguished from this case.

19          That case -- now, the government -- there's some

20   issues about how much time he's facing.  In that case, the

21   person was facing two to four years.  The amount involved in

22   that case supposedly was $6 million.  That's a lot more

23   than the amount they allege here.  Here they allege

24   1.5 million, and we're not conceding, even if there was

25   criminal activity, that -- even that amount, but that's what

1     the government's alleging.  And so at the outset, you -- one

2     would think that Mr. Wu would be facing less than two to four

3     years.

4            Now, later in its papers, the government goes through

5     and calculates the guidelines, and it comes up to a range

6     that's higher than that, but I note their range is based on a

7     lot of assumptions.  Not only is it based on the assumption

8     that the loss amount will be found to be 1.5 million or more,

9     it's also based on an assumption that this offense involved

10    sophisticated means.  That's very questionable.  There's -- I

11    mean, I don't know the case well enough, but I -- I know that's

12    often very debatable and very hotly contested, and in order for

13    a case to -- for a Court to find sophisticated means, it has to

14    be quite sophisticated.

15           The government alleges that a substantial portion of

16    the offense was overseas.  So it's unclear to me -- clearly the

17    government alleges that there -- there was an overseas aspect

18    to this case, but whether it was substantial, it's not clear to

19    me that that's what a court would find if there's a conviction

20    in this case.  The government's guideline calculation also

21    depends on the finding that Mr. Wu played an aggravating role

22    in this offense.  I guess that he'd have to be a manager or

23    leader or organizer or some -- play some role with others that

24    would make him more of -- you know, a higher-level person.  So

25    the Court would have to find that.

1          And it's possible if many people are involved that

2     Mr. Wu could even get a mitigating role adjustment, would --

3     would reduce his guidelines if it's determined that he played

4     a -- he -- he was a minor participant or a minimal participant.

5     It could even bring the guidelines down.  And also the

6     government claims in its guideline calculation there would be

7     an enhancement for unauthorized access devices.  So it's --

8     that guideline calculation depends on a lot of assumptions that

9     are just not clear that they would apply at all.  And when you

10    look at the *Epstein* case, $6 million, two to four years, at the

11    outset one would assume that this case would involve less time.

12         The government also discusses the weight of the

13    evidence, and as I have said previously -- and I think some of

14    my colleagues -- there are cases that indicate that the weight

15    of the evidence -- and I know one's in district court.  I -- I

16    believe it's Amy Berman Jackson has an opinion.  The weight of

17    the evidence doesn't mean how strong is the government's case

18    against the defendant in the instant offense.  It means how

19    strong is the evidence with regard that they're a danger to the

20    community or that they'll flee.

21         Now, here the government's not alleging he's a danger

22    to the community.  So in this case, it's how -- what is the

23    weight of their evidence with regard to that Mr. Wu would flee.

24    And we would submit that the -- that the weight of the

25    government's evidence that Mr. Wu would flee is very, very

1    weak.

2              Now, the government's analysis with regard to the

3    history and characteristics is -- I pause.  My notes, frankly,

4    say if this was not a serious case, the -- the reasoning would

5    be laughable.  The -- when I read that section, I expected the

6    government would talk about Mr. Wu's prior history.  Rather,

7    the government goes on and on to talk about what Mr. Wu

8    allegedly did in the instant case.  And we would submit,

9    according to the Bail Reform Act, that that type of argument

10   is -- is inappropriate and it -- and an argument that the Court

11   should not consider.

12             The Bail Reform Act indicates that nothing in that

13   act -- I can't recall the exact language.  I think it's --

14   alters or diminishes the presumption of innocence.  And it's

15   because of that concept that people who are presumed innocent,

16   the Court has to maintain that presumption of innocence, and

17   they shouldn't be held in Court for something that they haven't

18   been found to do.  That's what the reasoning is in the other

19   cases that say that the weight of the evidence is not what's

20   the weight of the evidence with regards to the offense; it's

21   what's the weight of the evidence with regard to dangerousness

22   or flight because the Court has to maintain the presumption of

23   innocence.

24             So the government, of course, has to rely on the

25   instant case when it talks about history and characteristics,

1    because there's nothing else about Mr. Wu's history and

2    characteristics that would in any way suggest that he would

3    flee.

4           The government cites no prior criminal convictions

5    because he has none.  The government cites no prior failures to

6    appear in court because that's not happened.  The government

7    inadequately suggests that Mr. Wu has weak ties or -- or lacks

8    ties to the United States because the evidence is is that he

9    has strong ties to the United States.  Mr. Wu earned his

10   master's degree at a United States university in the state of

11   Virginia.  He's worked two jobs since he graduated, and both of

12   those jobs were in the D.C. area.  The most recent -- both jobs

13   were as a structure engineer -- structural engineer.  The most

14   recent job was at the place of his arrest earlier this week,

15   and he had been working at that place for three years.

16          And I'll note I have not been in touch with his

17   employer.  I -- I do not know what the status of his employment

18   is.  I don't know if the employment here is for Mr. Wu or

19   here's another side or understands he's presumed innocent, he's

20   not been convicted of anything, whether his job will be

21   available.  And I want to emphasize that nobody's in dispute

22   that he was working there lawfully.  He was in the country

23   lawfully, certainly up until the time of his arrest earlier

24   this week.

25          The government cannot cite to any prior acts of

1    dishonesty, and I must emphasize prior acts.  I know they claim

2    that he was dishonest in the case, he was dishonest during his

3    arrest, but there's no other evidence of dishonesty.  They

4    can't claim we've checked his Virginia Tech records and he was

5    found that he was cheating in college or -- or any other

6    allegations that he did anything dishonest.  There's none of --

7    there's no such evidence in this case.

8            And there's no other evidence that the government is

9    able to cite indicating that Mr. Wu would flee.  More about his

10   ties is that Mr. Wu does live in Virginia.  He lives with his

11   wife and he lives with his child.  His child is -- the

12   government claims the child lives and -- overseas.  The

13   child -- child is overseas at the moment visiting, but the

14   child does not live overseas.  He lives in Virginia with his

15   wife and child.  His child is a United States citizen so has

16   every interest -- the parents, I should say -- the child's

17   young and probably hasn't developed any intent at the moment as

18   to where the child wants to be, but the parents have every

19   interest in -- on that child living in the United States,

20   growing up in the United States, and -- and being educated

21   here.

22           So in addition to having no criminal history, no

23   failures to appear, strong ties to the D.C. area -- in fact,

24   let me back up.  I wanted to note not only the family, he has

25   many friends and professional colleagues in the area.  So in

1    addition to the lack of criminal history, no failures to

2    appear, strong ties to the D.C. area, the government has

3    presented no evidence that Mr. Wu would flee, no evidence that

4    he's made plans, no evidence that he's done anything

5    suspicious, like suspicious financial transactions.

6         There's cases like that that say if, you know,

7    certain things that look suspicious financially, that

8    somebody's making plans or arrangements to flee, kind of

9    coordinating with people in foreign countries in a way that

10   looks like they're trying to have these people receive them or

11   help them leave the country.  They present no evidence of the

12   sort.  No evidence of any false travel documents.

13        I assumed that they seized his passport, but just a

14   moment ago they -- they -- I don't know if they're certain, but

15   now they're -- I believe they don't think they've seized it,

16   but we assumed during the search of the residence they would

17   have seized it.  If they have not seized it, Mr. Wu will turn

18   over his passport as soon as the Court asks.  And Mr. Wu, if

19   released, will live in his residence in northern Virginia with

20   his wife and with his child, when his child returns back to the

21   country.

22        I want to -- the government claims in its filing that

23   Mr. Wu has a condo that's valued -- or at least was purchased.

24   I don't know what it's valued at the moment, but purchased for

25   $230,000.  If that's correct, I'm relied -- we're not

1    acknowledging whether that's true or not, but if that's true,

2    that's -- that's an interest.  That's ties to the community.

3    That means he has 200,000, maybe more -- it's appreciated in

4    equity -- in that property.

5            Mr. Wu does have a property where he lives right now

6    in McLean, Virginia, in which he has $300,000 of equity in that

7    property, and I cite that again because that's ties to the

8    community.  If he were to flee, that's $300,000 he's just

9    leaving behind.  And -- and if the government's information is

10   accurate, another $230,000 he'd be leaving behind.  So we have

11   a total of $530,000 that he would just be leaving behind.

12   That's not something Mr. Wu would want to do.

13           Mr. Wu, if released, would like to return to work in

14   some fashion.  He would like to return to his place of

15   employment at the time of his arrest, if allowed.  Otherwise,

16   Mr. Wu is a very highly educated person and we believe is

17   someone who would be able to get a job.  He has not been -- at

18   this moment he has not been convicted of anything.  So if he

19   applies for jobs, he has no felony or misdemeanor conviction.

20   He's simply accused at this stage.

21           So we ask that the Court release Mr. Wu on the least

22   restrictive conditions.  Mr. Wu and I talked about various

23   other conditions, and I'll mention the types of conditions he'd

24   be willing to submit to, but we're not encouraging these

25   conditions because we -- because the Court's duty is to impose

1     the least restrictive conditions.

2             But he would be agreeable to reporting in person.

3     He'd be agreeable to being monitored by GPS, which I know

4     allows -- the way that works -- and pretrial can speak to this

5     better, but if there's active monitoring, pretrial services

6     would be notified if he goes into an area of an airport or a

7     train station or a bus station; that they would get an alert.

8     As I indicated, if the government does not have his passport

9     and it's available to Mr. Wu, he will -- he will turn that

10    passport over to pretrial services, and Mr. Wu would also be

11    agreeable to home confinement or any other conditions I -- I

12    did not suggest, just so long as Mr. Wu can be released.

13            Thank you.

14            THE COURT:  Thank you.

15            Mr. Kleinman, did you want to be heard any further?

16            MR. KLEINMAN:  Just a few clarifications.  We don't

17    believe we have the passport.  Neither of these agents was at

18    the residence when that search was undertaken, but we don't

19    believe we have the passports.  I do think it's a little

20    disingenuous to say you should see evidence of someone

21    preparing to flee before they know that there's a reason to

22    flee.

23            So I don't think that's an entirely persuasive

24    argument.  We have no -- no disagreement; his child is

25    definitely a U.S. citizen.  We just know that the child is not

1    here at the moment.  I assumed that the child was living with

2    the grandparents, but the child is certainly not here right

3    now.

4            I'll note the defendant in *Tapia* was not held.  It

5    was an ICE detainer case.  I just wanted to mention to that --

6    to the Court, to answer the Court's question, about whether

7    citizenship of another country is sufficient.  But based on the

8    record here, we do -- especially in light of the fake

9    identification cards that he's been able to procure, even if we

10   got his passport, there's nothing -- no one in the

11   United States could, you know, prohibit the Embassy of China

12   from issuing a passport to him and from him fleeing.

13           Based on all that, we'd ask that he be held.

14           THE COURT:  Thank you.  Mr. Miles.

15           MR. MILES:  The only point I'll respond to is the

16   government's argument that it was disingenuous for us to say

17   they found no evidence of him trying to flee when he had no

18   reason to think he should be fleeing.

19           I'll state -- I'll make two points.  One is the

20   government argues that he had notice by the, I think, U- --

21   some agency.  I forgot which agency, but they notified him and

22   they make the argument and he didn't stop after he was

23   notified.  So obviously there was some sense of notice, and he

24   had every reason to be suspicious of -- that -- that they were

25   on to him, if you will, if he, indeed, was involved in this.

1          And second point -- it escapes me at the moment.

2     Bear with me.  Well, the first point was the most important.

3     If I recall it, I'll --

4          THE COURT:  Okay.

5          MR. MILES:  But that's my response, yes.

6          THE COURT:  Thank you.

7          MR. KLEINMAN:  Can I make one point?  And maybe

8     Mr. Miles will have the opportunity to have the other one come

9     into his mind.

10          My understanding is that pretrial services does

11     passive GPS monitoring.  That's not live 24/7, you get a ping.

12     So if he were to leave one weekend, then it is what it is.  We

13     wouldn't know until after the fact.

14          THE COURT:  All right.  Thank you.

15          MR. MILES:  (Inaudible) must be new.  I -- I was

16     aware that they had done active, but still we -- we would do

17     GPS monitoring.  And as I indicated before, I do not think

18     those restrictions are necessary.  I think the Court's duty to

19     impose the least restrictive condition would not warrant that

20     restriction, but I just wanted to make clear that Mr. Wu would

21     be agreeable to -- to those conditions.

22          THE COURT:  Okay.  Thank you, Mr. Miles.

23          Ms. Schunk, at the time of Mr. Wu's initial

24     appearance, I don't think any address was corroborated.  Has

25     pretrial been able to verify an address in that time period?

1           MS. SCHUNK:  No, Your Honor, and the reason why we

2    couldn't is because the reference that was provided was the

3    defendant's wife.

4           THE COURT:  Oh, okay.

5           MS. SCHUNK:  So --

6           THE COURT:  Okay.  And she's been charged and held?

7           MS. SCHUNK:  Exactly.

8           THE COURT:  Okay.  Thank you.

9           MS. SCHUNK:  Thank you.

10          MR. MILES:  I remembered the thought.

11          THE COURT:  Okay.

12          MR. MILES:  The point was -- the -- the thought is

13   also the government alleges that sophisticated means were

14   involved here, and if this was, indeed, a sophisticated scheme,

15   I would argue a scheme is not sophisticated without an escape

16   plan.  Thank you.

17          THE COURT:  Thank you, Mr. Miles.

18          The government has asked the Court to hold Mr. Wu

19   without bond pending trial on the grounds that he presents a

20   serious risk of flight.  The Bail Reform Act requires the

21   government to prove that by a preponderance of the evidence.

22          And to determine whether the government has met that

23   burden, I have to consider four factors, which are the nature

24   and circumstances of the charged offense, the weight of the

25   evidence against the defendant, the defendant's history and

characteristics, and the nature and seriousness of any danger

to the community.

Now, the first factor, the nature and circumstances

of the charged offense, weighs in favor of pretrial detention

on the grounds of flight risk.  Mr. Wu has been charged with

committing fraud against Apple, conspiracy to commit mail

fraud.  The maximum possible sentence is 20 years.  The

government asserts that the potential guidelines range is

between five and nine years.  The defense notes that there

could be mitigating circumstances that would reduce the

guidelines range.  Nonetheless, given the severity of the

charge, as well as the fact that it is a charge involving

fraud, which inherently involves deception, I find that the

nature and circumstances of the offense weighs in favor of

detention.

The weight of the evidence also weighs in favor of

pretrial detention because the evidence is strong enough to

create an incentive to flee given the severity of the charges.

The government has proffered that it has extensive evidence,

including intercepted packages, surveillance photos,

information obtained through search warrants to access the

defendant's -- some of his search history and -- as well as

having recovered 40 telephones from the defendant's residence

at the time of his arrest, as well as documentary evidence of

UPS Store mailbox applications and intercepted packages.  I

1    think I said intercepted packages already.  And evidence of

2    false Hong Kong identity cards allegedly used in furtherance of

3    the fraud.

4            Given the strength of the evidence and consistent

5    with case law from this district, the weight of the evidence

6    favors detention because it indicates that there is enough

7    evidence that would make a defendant inclined to flee to avoid

8    facing these charges.

9            The third factor I have to consider is Mr. Wu's

10   history and characteristics.  Unlike many defendants who appear

11   before this Court, Mr. Wu has no criminal history.  He has no

12   history of arrests, convictions, no failed appearances because

13   there appear to have been no cases where he would have been

14   required to appear.  He has friends and professional colleagues

15   in the D.C. area.  His spouse also is in the area.  She's also

16   facing charges, but he has significant home equity and two

17   residences in the northern Virginia area, and the defense

18   proffers that Mr. Wu was educated in the United States,

19   received his master's degree in Virginia, and has been employed

20   here.

21           On the other hand, the government notes -- and I

22   should also note in Mr. Wu's favor that he is here -- there's

23   no allegation that he's here unlawfully.  So he appears to be

24   here legally.

25           On the other hand, the government cites Mr. Wu's ties

1    to China, the fact that there's no extradition treaty; so that

2    if Mr. Wu were to flee to China, there would be no means of

3    getting him back; that Mr. Wu has family in China, an infant

4    child who is at least temporarily in China.  And the -- I

5    believe the government contends that Mr. Wu has the resources

6    to flee, and they also note that the false Hong Kong identity

7    cards also are a history and characteristic that would support

8    detention on flight risk grounds.

9         I find that this factor cuts both ways.  So it does

10   not favor detention or release because there are quite a few

11   very positive aspects, but then, on the other hand, there are

12   the significant ties to China.

13        The fourth factor I have to consider is the nature

14   and seriousness of any danger to the community if Mr. Wu were

15   to be released.  There's no evidence that Mr. Wu is dangerous.

16   In flight risk cases this factor is often less significant,

17   although there are some flight risk cases where it does matter.

18   I would just note that this factor weighs in favor of release,

19   as there's no indication that Mr. Wu is -- is a dangerous

20   person.

21        Because there's no presumption of detention, I have

22   to weigh all four of these factors, some of which weigh in

23   favor of detention, some of which weigh in favor of release,

24   and consider the least restrictive alternatives to detention.

25   I would note that the defense has asked that Mr. Wu be released

1    and has acknowledged that he would agree to GPS monitoring,

2    in-person reporting.  He would agree to surrender his passport.

3    And the defense notes that given the home equity and the ties

4    to D.C. that Mr. Wu has that he can be trusted to remain here

5    and not flee.

6         I think this is a difficult case given Mr. Wu's

7    complete lack of any criminal history.  However, I've given

8    this thought in looking at cases evaluating risk of flight.  In

9    somewhat analogous context, I conclude that the government has

10   carried its burden by a preponderance of the evidence standard

11   to show that Mr. Wu presents a sufficiently serious risk of

12   flight; that there are no conditions I could set that would

13   reasonably assure his appearance in Court as required.

14        So I will order that he be held without bond pending

15   trial, and I will issue a written decision explaining my

16   reasoning in more depth.  I would note that this is just my

17   decision, and the defense may, of course, appeal this decision

18   and seek further review of Mr. Wu's bond status.  At the

19   moment, as there's no district judge on this case, such appeal

20   would go to the Chief Judge of this court.

21        Before I remand Mr. Wu into the marshal's custody,

22   were there any other issues from either the government or the

23   defense?  Did I -- and I'm losing track.  I think we confirmed

24   the date.  Is there a next -- did we confirm the date of the

25   preliminary hearing?

1              THE COURTROOM DEPUTY:  Yes.  Set for the 12th of

2     December.

3              THE COURT:  Okay.  Are there any other issues from

4     the government or the defense?

5              MR. KLEINMAN:  I'd ask to exclude the tried -- the

6     time under the Speedy Trial Act.  I think having him hire an

7     attorney and having that attorney be able to talk to the

8     government is in both parties' interests, as it might result in

9     a preindictment resolution in this case that could potentially

10    be more favorable to Mr. Wu than one post-indictment.

11             THE COURT:  Mr. Miles.

12             MR. MILES:  Given that I'm kind of temporary counsel,

13    I'm going to take no position.

14             THE COURT:  Okay.  I will grant the request to

15    exclude the time between today and the 12th of December from

16    any speedy trial calculation.  Given that this is a relatively

17    short period of time and will give Mr. Wu an opportunity to

18    obtain -- con- -- confirm his own retained counsel and for that

19    counsel to communicate with the government, I find that this

20    short exclusion of time, six days, will best serve the ends of

21    justice and outweigh Mr. Wu's and the govern- -- and the

22    public's interest in the speedy trial.

23             That will conclude this matter.  Mr. Wu is remanded

24    into the custody of the marshals to be held without bond

25    pending trial.

1                    And, counsel and pretrial, you may all be excused.

2       Thank you.

3                    (The proceedings were concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        CERTIFICATE

2            I do hereby certify that the foregoing is a true,

3     correct, and complete transcript of the audio-recorded

4     proceedings in this matter, audio recorded on December 6, 2019,

5     and transcribed from the audio recording to the best of my

6     ability, and that said transcript has been compared with the

7     audio recording.

8            Dated this 20th day of December, 2019.

9

10                           /s/ Nancy J. Meyer
                             Nancy J. Meyer, Official Court Reporter
11                           Registered Diplomate Reporter
                             Certified Realtime Reporter
12                           United States Courthouse, Room 6509
                             333 Constitution Avenue Northwest
13                           Washington, DC 20001
                             (202) 354-3118
14                           nancy_meyer@dcd.uscourts.gov

15

16

17

18

19

20

21

22

23

24

25
```